UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**BLACK POINT MARINE, LLC,**

    Plaintiff,

vs.                                Case No. 8:15-cv-1210-T-27AEP

**BLACK FIN YACHT CORPORATION,
HIDROMEGA, LLC, LEONARDO
LLANEZA, SR.,**

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (Dkt. 43) and Motion for Entry of Judgment after Default against Defendants Black Fin Yacht Corporation and Hidromega, LLC (Dkt. 57). The time for *pro se* Defendant Leonardo Llaneza, Sr. to respond to the Motion for Summary Judgment has passed and that Motion (Dkt. 43) is deemed unopposed.[1] Defendants Black Fin Yacht Corporation and Hidromega, LLC have failed to obtain counsel pursuant to this Court's order (Dkt. 44) and Clerk's Defaults have been entered against them (Dkts. 55, 56). Upon consideration the Motion for Summary Judgment (Dkt. 43) is GRANTED against Leonardo Llaneza, Sr. The Motion for Entry of Judgment after Default (Dkt. 57) is GRANTED against Black Fin Yacht Corporation and Hidromega, LLC.

**Summary**

In this trademark infringement action, Plaintiff claimed federal and common law trademark

---

[1] By Order dated May 13, 2016 (Dkt. 45), Llaneza was advised of the requirements of Rule 56, Fed. R. Civ. P. and had until June 2, 2016 to file a response. Llaneza subsequently moved for an extension to file his reply (Dkt. 47). By Order dated June 3, 2016 (Dkt. 49), Llaneza had until July 5, 2016 to file a response.

violations, federal and common law unfair competition, and violations of the Anti-Cybersquatting Consumer Protection Act related to the use of Plaintiff's mark, U.S. Reg. No. 3821920 ("BLACKFIN").

Upon reviewing the Complaint (Dkt. 8), the Motions (Dkts. 43, 57), and the supporting documents, the Court makes the following findings:

1. Plaintiff is the owner of the BLACKFIN mark, U.S. Reg.No. 3821920. Plaintiff's mark is strong and distinctive. It has been used in commerce since September 11, 1987. Plaintiff is entitled to damages and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117, the amount of which to be determined by future order.

2. Defendant Black Fin Yacht Corporation ("BFYC") used the BLACKFIN mark in commerce without Plaintiff's consent subsequent to Plaintiff's first use of its mark. BFYC's mark, U.S. Serial No. 77746747 ("New-BLACK FIN YACHT") is similar in design to Plaintiff's BLACKFIN mark and is used in connection with products identical to Plaintiff's products. BFYC adopted and began use of the BLACK FIN YACHT mark in bad faith.

3. Defendant Hidromega, LLC ("Hidromega") began using the fictitious name Blackfin Yacht subsequent to Plaintiff's use of its mark. The name is confusingly similar to Plaintiff's mark and is used in connection with products identical to Plaintiff's products. Hidromega adopted and began use of the name in bad faith.

4. Defendant Leonardo Llaneza, Sr. ("Llaneza") registered the domain name www.blackfinboats.com. The domain name is confusingly similar to Plaintiff's mark and is used to promote products identical to Plaintiff's products. Without Plaintiff's authorization, the homepage of the website prominently displays Plaintiff's mark. Llaneza's use of the domain name and Plaintiff's mark is subsequent to Plaintiff's use of the mark.

**Introduction**

The original Black Fin Yacht Corporation ("Original-BFYC") was a boat manufacturing company that dissolved and was reestablished ("Old-BFYC").[2] Old-BFYC had an established trademark, U.S. Reg. No. 1500457 ("'One Word' BLACKFIN").[3] But, after a bankruptcy in the late 1990s, its assets, including the "One Word" BLACKFIN mark, were bought and sold from one owner to another.[4] Plaintiff eventually acquired Old-BFYC's assets and the "One Word" BLACKFIN mark.[5] The "One Word" BLACKFIN mark expired and Plaintiff subsequently registered

---

[2]In the early 1970s in South Florida, Original-BFYC was formed. (Herndon Dep. 7:3-10, Apr. 5, 2016, Dkt. 43-7). It was in the business of building fiberglass boats and had Carl Herndon as its president. (Herndon Dep. 6:22-7:14). Original-BFYC used the Old-BLACKFIN YACHT mark as early as December 14, 1973 to sell boats. (Herndon Dep. 8:5-19, Ex. 2). Original-BFYC was dissolved on April 18, 1984. (Herndon Dep., Ex. 1). The Old-BLACKFIN YACHT mark was registered with the USPTO on July 31, 1984. (Herndon Dep. Ex. 2).
  In 1987, Old-BFYC was formed with Herndon as its president. (Herndon Dep. 10:20-24). It was also in the business of manufacturing and selling boats. (Herndon Dep. 10:25-11:4). Old-BFYC acquired the trademark rights in the Old-BLACKFIN Yacht mark. (Herndon Dep. 12:2-6). Old-BFYC discontinued use of the Old-BLACKFIN YACHT mark and began using the "One Word" BLACKFIN mark for boat sales. (Herndon Dep. 12:7-18).

[3]The "One Word" BLACKFIN mark was used as early as September 11, 1987 and was registered to Old-BFYC on August 16, 1988. (Dkt. 43-3).

[4]Old-BFYC continued to use the "One Word" BLACKFIN mark until it filed for bankruptcy in February 1997. (Herndon Dep. 13:10-19, Ex. 5; Dkts. 43-9, 43-11). In October 1997, Herndon's employment with Old-BFYC terminated and the bankruptcy court ordered substantially all of Old-BFYC's assets sold to Detroit Diesel Capital Corporation ("DDCC"). (Herndon Dep., 14:9-17; Dkt. 43-8). Old-BFYC's tradenames, trademarks, patents and designs were included in the sale to DDCC. (Dkt. 43-8 ¶ 3).
  At the time of the sale, DDCC was a wholly owned subsidiary of Detroit Diesel Corporation. (Dkt. 43-13 at 52). Another Detroit Diesel Corporation subsidiary, BYC Acquisition Corporation, acquired the assets of Old-BFYC through a secured lending relationship and began using the "One Word" BLACKFIN mark for boat sales. (Dkts. 43-13, 43-14).
  In October 1998, Revenge Marine, Inc. purchased BYC Acquisition Corporation. Included in the purchased assets were "[a]ll . . . trademarks . . . associated with Blackfin, Blackfin Yacht and Blackfin Yacht Corporation." (Dkt. 43-15 at 262, 281). Revenge Marine, Inc. continued to use the "One Word" BLACKFIN mark to sell boats. (Dkt. 43-16).
  As a result of Revenge Marine, Inc. defaulting on a security agreement, in July 1999, the "assets required to manufacture the Blackfin line of boats" were sold to HSPC Acquisition Corp. ("HSPC"). (Dkt. 43-17 at 3). HSPC gave Salt Shaker, LLC a license to use the "One Word" BLACKFIN mark for the production of boats. (Dkt. 43-19 ¶ 2.6). Salt Shaker, LLC used the trademark license until it was terminated in August 2002. (Dkts. 43-20, 43-21).

[5]In September 2002, as a result of HSPC defaulting on a security agreement, the Miami-Dade County Circuit Court ordered the sale of substantially all of HSPC's assets, "collectively known as the 'Blackfin Yacht assets'" including "trademarks" owned by HSPC. (Dkt. 43-22 ¶ 8). Caterpillar Financial Services Corporation acquired the "Blackfin Yacht assets" and in December 2002 sold them to Plaintiff. (Dkt. 43-23 Ex. 1).

3

the identical BLACKFIN mark, U.S. Reg. No. 3821920.[6]

While Old-BFYC's assets were being sold from one owner to another and the market for luxury sport fishing boats was dwindling, a new company, BFYC, emerged. It claimed that Plaintiff's BLACKFIN mark was identical to its mark, U.S. Serial. No. 77746747 ("New-BLACK FIN YACHT") and filed a petition to have the BLACKFIN mark cancelled with the United States Patent and Trademark Office ("USPTO").[7] BFYC also claimed it was the previous owner by assignment to the mark, U.S. Reg. No. 1287835 ("Old-BLACKFIN YACHT").[8] The Cancellation Proceeding is suspended pending a resolution of this action. (Dkt. 43 ¶ 9).

Plaintiff brings this action against BFYC for trademark infringement pursuant to 15 U.S.C. § 1114(1) and Florida common law, against all Defendants for unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), against Leonardo Llaneza, Sr.[9] for violation

---

[6] Plaintiff constructed and sold Blackfin branded boats beginning in 2003 through 2007. (Marshall Aff. ¶¶ 7, 10; Dkt. 43-2). On or about June 8, 2005, the "One Word" BLACKFIN mark was cancelled by the USPTO. (Dkt. 43-34). Plaintiff filed a new registration for the BLACKFIN trademark on or about March 3, 2006, which was registered with the USPTO on July 20, 2010. (Dkt. 43-4).
   The recession in 2008 impacted the boat building business and from 2008 through 2011 "the luxury sportfishing yacht market had all but disappeared." (Marshall Aff. ¶ 13). Plaintiff suspended production of Blackfin boats until 2011 when it began designing a new model. (Marshall Aff. ¶ 13). In 2012, Plaintiff released the new model for sale and continues to sell Blackfin boat models and use the BLACKFIN mark. (Marshall Aff. ¶¶ 14, 16, 17; Dkts. 43-30, 43-31, 43-32, 43-33).

[7] In 2012, BFYC petitioned the Trademark Trial and Appeal Board of the USPTO to cancel the 2010 BLACKFIN mark, alleging that the BLACKFIN mark is virtually identical to the New-BLACK FIN YACHT mark ("Cancellation Proceeding"). (Dkt. 43-5). BFYC further alleged that the BLACKFIN mark is likely to cause confusion with its mark and result in damage. (*Id.*). BFYC cited both the New-BLACK FIN YACHT mark and the Old-BLACKFIN YACHT mark as its basis for cancellation. (Dkt. 8-8).
   BFYC, formed in 2005, (Dkt. 8-2), also alleged it was the previous owner to the Old-BLACKFIN YACHT mark by virtue of a "2005 assignment" from Herndon, as president of Old-BFYC, to the then owners of BFYC, Martin Alvarez and Fernando Alvarez. (Dkt. 43-5). But Herndon had not been affiliated with Old-BFYC since 1997, (Hernond Dep., 10:5-10), Old-BFYC had replaced the Old-BLACKFIN YACHT mark with the "One Word" BLACKFIN mark, (Herndon Dep., 12:7-18), Herndon testified that while the notarized signature on the 2005 assignment looked like his, he did not sign it, (Herndon Dep., 17:9-25), and the Old-BLACKFIN YACHT mark had expired on February 26, 2007.

[8] BFYC also claimed it "is also the sole owner of the common law trademark rights to 'Black Fin.[']" (Dkt. 8-8 ¶ 1), but the Court is unable to determine what Black Fin mark BFYC was referencing.

[9] Llanzeza is listed as the registered agent for BFYC. (Dkt. 8-2).

4

of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), against BFYC for injury to business reputation and trademark dilution, and against BFYC and Hidromega[10] for common law unfair competition. (Dkt. 8).



Old-BLACK FIN YACHT
U.S. Reg. No. 1287835



"One Word" BLACKFIN
U.S. Reg. No. 1500457

New-BLACK FIN YACHT
U.S. Serial No. 77746747



2010 BLACKFIN
U.S. Reg. No. 3821920

**Standard**

*Default Judgment*

Upon entry of a default, the defendant admits the plaintiff's well-pleaded allegations of fact. *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[11] The default, however, does not in itself warrant a default judgment. *Id.* "[T]he well-pleaded allegations in the complaint [must] actually state a substantive cause of action" and there must be "a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). Even after liability has been established, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters . . . ." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be

---

[10]Hidromega registered the fictitious name Blackfin Yacht with the State of Florida on April 29, 2014, (Dkt. 8-6), and is listed as an Officer/Director of BFYC,(Dkt. 8-2).

[11] In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

awarded on default judgment only if the record adequately reflects the basis for the award). Under Federal Rule of Civil Procedure 55(b), an evidentiary hearing may be held to determine appropriate damages, but it is not required. *See Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911-12 (11th Cir. 2011) (citing *SEC v. Smyth*, 420 F.3d 1225, 1230 n.13 (11th Cir. 2005)).

### *Summary Judgment*

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). Facts are viewed and reasonable inferences are drawn in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 1774–75, 167 L. Ed. 2d 686 (2007).

If the motion for summary judgment is unopposed, the movant still bears the burden of satisfying the Rule 56(a) requirements and it must be supported by the submitted evidence. *See U.S. v. $688,670.42 Seized from Regions Bank Account No. XXXXXX5028*, 449 F. App'x 871, 873 (11th Cir. 2011). "The district court need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *U.S. v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). At the least, however, "the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment." *Id.* at

1101-02 (citing *Jaroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) *(per curiam)*).

**Discussion**

### *Ownership of the 2010 BLACKFIN mark, U.S. Reg. No. 3821920*

"A certificate of registration of a mark . . . [is] prima facie evidence of the validity of the registered mark . . . and . . . of the registrant's ownership of the mark . . . ." 15 U.S.C. § 1057(b) (2006);[12] *see also In re Tam*, 808 F.3d 1321, 1343 (Fed. Cir. 2015), *as corrected* (Feb. 11, 2016). Rights in unregistered marks are appropriated through prior use in commerce. *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011); *see also Bauer Lamp Co. v. Shaffer*, 941 F.2d 1165, 1171 (11th Cir. 1991) ("[t]rademark protection accrues with use").

It is undisputed that Plaintiff owns the certificate of registration of the BLACKFIN mark and the design of the BLACKFIN mark has been used in commerce since September 11, 1987. (Dkts. 43-3, 43-4). Through a series of defaults, purchases, and ultimately a failure to respond to a petition for cancellation as described *supra* in notes 2-5, the "One Word" BLACKFIN mark was owned by Old-BFYC, used in commerce, acquired by Plaintiff, and cancelled by the USPTO in 2005. After cancellation, Plaintiff continued to use the "One Word" BLACKFIN mark in commerce, (Marshall Aff. ¶ 10; Dkt. 43-2), and preserved its rights in the unregistered mark, *Crystal Entm't*, 643 F.3d at 1321. Plaintiff filed for the BLACKFIN mark on March 3, 2006, with the registration issuing on July 20, 2010. (Dkt. 43-4). And, Plaintiff has continued to use the mark in commerce through January 2016. (Marshall Aff. ¶¶ 16, 17; Dkt. 43-33).

There is no evidence that Llaneza acquired rights in the BLACKFIN mark or the "One Word" BLACKFIN mark by virtue of a purchase, assignment, or prior use. By virtue of the default, BFYC

---

[12] The current version of 15 U.S.C. § 1057(b) provides: "A certificate of registration of a mark . . . [is] prima facie evidence of the validity of the registered mark . . . . and . . . of the *owner's* ownership of the mark." (emphasis added) (eff. Mar. 17, 2010).

7

and Hidromega have admitted that Plaintiff owns the BLACKFIN mark. Therefore, because Plaintiff possesses the certificate of registration for the BLACKFIN mark, acquired rights to it, and it has been in use since September 11, 1987, Plaintiff has established that it owns the mark. *See* 15 U.S.C. § 1057(c) (2006); *In re Tam*, 808 F.3d at 1343; *Crystal Entm't*, 643 F.3d at 1321; *J. C. Hall Co. v. Hallmark Cards, Inc.*, 340 F.2d 960, 962 (C.C.P.A. 1965) (proof of continual use of a registered mark relates back to the filing of the application). Accordingly, summary judgment and default judgment in favor of Plaintiff on the issue of whether Plaintiff owns the BLACKFIN mark is due to be granted.

### *Trademark Infringement 15 U.S.C. § 1114, Unfair Competition 15 U.S.C. § 1125(a), Florida Common Law Trademark Infringement, Florida Common Law Unfair Competition*

Federal trademark infringement, federal unfair competition, Florida common law trademark infringement, and Florida common law unfair competition are distinct causes of action that share similar elements. *See SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77 F.3d 1325, 1334 (11th Cir. 1996) ("To establish a prima facie case in an ordinary [federal] trademark infringement suit, a claimant need only demonstrate that: (1) it enjoys enforceable rights in its mark, and (2) the alleged infringer adopted a mark that is the same or confusingly similar."); *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004) (the elements of a federal unfair competition claim include the plaintiff showing that it had rights to the mark and "that the defendant adopted a mark or name that was the same, or confusingly similar, to plaintiff's mark such that consumers were likely to confuse the two."); *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521 (11th Cir. 1991) (holding that the Florida common law trademark infringement and unfair competition claims analysis is the same as the federal trademark

infringement analysis). Because the legal standards are essentially the same and/or identical, these claims are analyzed simultaneously. *See Contemporary Rest. Concepts, Ltd. v. Las Tapas-Jacksonville, Inc.*, 753 F. Supp. 1560, 1563 (M.D. Fla. 1991)

As discussed *supra*, Plaintiff has established that it owns the BLACKFIN mark. Thus, the first element of each claim has been met. *See Suntree Techs.*, 693 F.3d at 1346; *PetMed Express*, 336 F. Supp. 2d at 1218; *Investacorp*, 931 F.2d at 1521.

"A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citations and internal quotations omitted). By virtue of the default, BFYC and Hidromega have admitted that they adopted either the same mark, (Dkt. 8 ¶¶ 31-35), or a confusingly similar mark, (*Id.* ¶ 41-42), and that consumers were likely to confuse the two, (*Id.* ¶¶ 44, 68, 75-76). *See Eagle Hosp. Physicians*, 561 F.3d at 1307. Accordingly, default judgment is due to be entered against BFYC on the federal trademark infringement, federal unfair competition, Florida common law trademark infringement, and Florida common law unfair competition claims, and against Hidromega on the claims of federal unfair competition and Florida common law unfair competition. *See Eagle Hosp. Physicians*, 561 F.3d at 1307; *Suntree Techs.*, 693 F.3d at 1346; *PetMed Express*, 336 F. Supp. 2d at 1218; *Investacorp*, 931 F.2d at 1521.

Plaintiff argues that Llaneza engaged in unfair competition with its BLACKFIN mark because he is the "registrant" for the domain name blackfinboats.com and the homepage of the website prominently displays the mark, pictures of boats, and offers "Parts for Old Blackfin." *See* (Dkts. 8-4, 8-5).

"Domain names are unique." *Jysk Bed'N Linen v. Dutta Roy*, 810 F.3d 767, 774(11th Cir. 2015) (citing Karl M. Manheim & Lawrence B. Solum, *An Economic Analysis of Domain Name Policy*, 25 Hastings Comm. & Ent. L.J. 359, 364–65 (2003)). "It is . . . important that [a] trademark owner reserve the domain name closely associated with or identical to its trademark so that it may take advantage of its goodwill." *Id.* at 774-775. Domain names are managed by the Internet Corporation for Assigned Names and Numbers that oversees third-party registries. *Id.* at 775. A third-party registry is referred to as the "registrar" and is where the applicant registers the domain name. *Id*. at 775. The "registrant" of the domain name, is also the owner of the domain name. *Id.*

Blackfinboats.com has infringed on Plaintiff's mark by using a name similar closely associated with Plaintiff's mark and displaying Plaintiff's mark on the site. *See Jysk Bed'N Linen* 810 F.3d at 774-75; *PetMed Express*, 336 F. Supp. 2d at 1218.

The document Plaintiff relies on to support that Llaneza adopted its mark is a 3rd party website containing hearsay statements attributing the ownership of blackfinboats.com to Llaneza.[13] "When [as the case is here] the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it "must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.,* 941 F.2d 1428, 1438 (11th Cir. 1991) (alterations and emphasis in original) (quoting *Celotex Corp. v. Catrett*, 477 U.S.

---

[13]Generally, "inadmissible hearsay cannot be considered on a motion for summary judgment." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012). But, it may be considered if the statement could be reduced to admissible evidence. *Id.* at 1293-1294. Thus,"[w]hether [a] statement could be reduced to admissible form at trial - is a necessary condition [before] consideration of hearsay evidence at summary judgment." *Id.* at n. 37 While a representative from Whois.com is likely without personal knowledge that Llaneza is the registrant of the domain name, presumably a representative from Wild West Domains, LLC, the registrar of blackfinboats.com, could provide admissible evidence that Llaneza is the owner of the site.

317, 331, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986)). Although the Court has serious questions about the admissibility of the 3rd party website in its current form as evidence, it presumably can be reduced to an admissible form, it is not controverted by Llaneza, and despite ample opportunity for Llaneza to respond to the Plaintiff's motion, he has failed to do so. *See id.*; *Jones,* 683 F.3d at 1293-94. Thus, because Llaneza is the owner of a website with a similar name that displays Plaintiff's mark, summary judgment is due to be granted on the unfair competition claim against him.

**Conclusion**

Accordingly, it is **ORDERED that**:

1. Plaintiff's Motion for Summary Judgment and Memorandum of Law is **GRANTED** against Leonardo Llaneza, Sr on Count II.

2. Plaintiff's Motion for Default Judgment against Black Fin Yacht Corporation and Hidromega, LLC is **GRANTED**.

3. Plaintiff is directed to submit a brief, not to exceed 10 pages including the certificate of service, in support of its claim for maximum statutory damages against each Defendant and an affidavit detailing its reasonable attorney's fees and costs within **fourteen (14) days** of the date of this Order.

4. Defendants Black Fin Yacht Corporation, Hidromega, LLC, and Leonardo Llaneza, Sr. and their divisions, subsidiaries, owners, officers, agents, employees, successors, assigns, and all those persons in active concert or participation with them are hereby permanently enjoined and restrained from:

(i) making any present or future use of the marks BLACKFIN, U.S. Reg. No. 3821920, New-BLACK FIN YACHT, U.S. Serial No. 77746747, or any other mark confusingly

similar to the BLACKFIN mark;

      (ii)    making any present or future use of the fictitious name Blackfin Yacht or any other name confusingly similar to the BLACKFIN mark;

      (iii)    making any present or future use of the domain name www.blackfinboats.com or any other domain name confusingly similar to the BLACKFIN mark;

      (iv)    engaging in activity constituting infringement of Plaintiff's rights in the BLACKFIN mark.

5. The Clerk is directed to terminate all pending motions and **ADMINISTRATIVELY CLOSE** the file.

**DONE AND ORDERED** this 20th day of September, 2016.

*/s/ James D. Whittemore*
**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record,
*Pro se* Defendant,
Unrepresented parties